118 Cal.App.2d 653 (1953)
258 P.2d 78
CALIFORNIA COMPENSATION INSURANCE COMPANY (a Corporation), Petitioner,
v.
INDUSTRIAL ACCIDENT COMMISSION and CLARENCE O. SMITH, Respondents.
Docket No. 19166.
Court of Appeals of California, Second District, Division Three.
June 23, 1953.
Kearney, Scott & Clopton for Petitioner.
Kenneth Sperry, Edmund J. Thomas, Jr., and Alvin L. Dove for Respondents.
*654 SHINN, P.J.
The insurance carrier of the First Church of the Brethren petitions for review of an award of compensation to respondent Clarence O. Smith for injuries received while he was working on church property as a carpenter.
The matter was partially heard and was referred to respondent commission for the purpose of completing the record which the court considered to be then inadequate for a disposition of the matters in issue. (115 Cal. App.2d 142 [251 P.2d 348].) A transcript of additional evidence has been furnished and filed as a part of the record.
In 1949, the First Church of the Brethren, Incorporated, was constructing a church building. Some of the work was contracted, but the carpentry work, with a minor exception, was done by members of the church. These members were paid an hourly wage of $2.125, except upon days when they donated their services. This was usually on Saturdays, although some services were given without compensation on other days. It was a common practice among the carpenters to give some services free when they were not otherwise employed. It was the policy of the church membership and management to have the carpentry work done by members who were carpenters, and a principal reason was that while such members were paid wages at current rates they were expected to and did donate some of their services. There was no agreement with the several carpenters as to the extent of the donated services; each gave free time as he found to be convenient and when he was not otherwise employed. The work at all times was under the supervision of a foreman who directed the workmen and who was obeyed by them. This was true with respect to the work on Saturdays when the men were not being paid, as it was on other days. No work was done except under the supervision of the foreman. Mr. Smith did extensive work on the church for which he was paid, and a substantial amount of work on Saturdays and other days, for which he was not paid. He was injured on a Saturday by a fall. The foreman had sent him up to install molding around the spires, and it was in this work that he fell.
After due investigation and examination the insurance carrier commenced to pay Smith compensation at the rate of $27.93 per week. When the parties were unable to agree to a settlement for permanent disability, Smith filed an application with respondent commission, in October, 1951. Up to *655 that time he had received $2,709.21 as compensation. Extended hearings were had thereafter, and as a result an award was made in March of 1952, of $30 a week to July 1, 1951, $12,000 payable at the rate of $30 per week beginning July 9, 1951, and thereafter a life pension of $18.46 per week, less any sums paid on account of permanent disability indemnity, and the insurer was ordered to furnish Smith medical, surgical and hospital treatment.
The sole question in the case is whether an employer-employee relationship existed at the time of Smith's injuries. The petitioner contends that Smith's services were donated, that he was a mere volunteer, and in no sense an employee. We think the employer-employee relationship did exist and that the injury was compensable.
[1] The carpenters were at all times under the direction and supervision of the foreman, on the days for which they were not being paid as well as on other days. The church had as much control over them as any other employer would have, with a single exception as to the hours that would be donated. The carpenters were in no sense independent contractors. They undertook to do nothing other than what they were told to do and were subject to control and direction as to how they should do it. This was potent proof that they were employees. (Riskin v. Industrial Acc. Com., 23 Cal.2d 248 [144 P.2d 16].) The fact that they were not paid for all of their services did not alter their relationship. In fact, Smith suggested to the foreman and the church treasurer that, if they would prefer, they might pay him for his work on Saturdays, or other donated work, and that he would contribute the wages earned to the church. This plan was not acceptable because of the bookkeeping that might be entailed. If the wages had been paid and then donated, there would have been no basis for a controversy, but we see no substantial difference between a donation of wages and the donation of Smith's services.
[2] Generally the test of compensability is whether the employee at the time of the injury was engaged in work which would reasonably have been expected of him, and which he should have expected to do under the terms of his employment. (Satchell v. Industrial Acc. Com., 94 Cal. App.2d 473 [210 P.2d 867].) [3] In the present case the nature of the relationship was a question of fact, and we think there is no room for doubt that the evidence fully supports the finding of the commission that Smith was an employee and *656 not a mere volunteer. The fact that he was not paid for every day he worked is immaterial if there was a mutual understanding that some time would be donated as an incident to his employment. There was a general understanding that the duties of the carpenters were not confined to the days when they would be paid, and it would seem that a carpenter who worked on Saturdays was in substantially the same position as that of a workman who was paid for a given number of hours and worked overtime, for which payment would not be expected. Since the evidence supports the finding that Smith was an employee, the authorities which hold that a mere volunteer is not an employee have no application.
The award is affirmed.
Wood (Parker), J., and Vallee, J., concurred.
A petition for a rehearing was denied July 13, 1953, and petitioner's application for a hearing by the Supreme Court was denied August 20, 1953.